**Richard MORGAN, Donna Morgan, Melissa Morgan, Kelly Morgan, and Samantha Morgan, Appellants,**

v.

**TIMMERS CHEVROLET, INC., Appellee.**

No. 01–97–01325–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 26, 1999.

Rehearing Overruled Oct. 7, 1999.

David P. Matthews, Houston, Dale W. Felton, Katy, Timothy Hootman, Houston, for Appellant.

Geoffrey H. Bracken, Houston, for Appellee.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

**OPINION**

MARGARET GARNER MIRABAL, Justice.

Richard Morgan and his family, plaintiffs below, appeal a take-nothing judgment in favor of Timmers Chevrolet, Inc., following a bench trial in this personal injury case.[1] The controlling issue is whether the trial court abused its discretion when it granted Timmers Chevrolet's motion to withdraw deemed admissions after the trial was well underway. We reverse.

**Case Background**

This lawsuit arose out of a work-related accident. Timmers Chevrolet hired A.C. Collins Ford to repair a transmission. A Timmers Chevrolet employee placed the transmission in the bed of a Timmers Chevrolet pickup truck and drove it to A.C. Collins Ford for the repairs. Morgan, a service technician employed by A.C. Collins, was in the bed of the truck when the transmission was removed. As Morgan prepared to get out of the truck, he stepped on the tailgate which was covered by a tailgate liner. The tailgate liner, which was not attached to the truck, slipped and Morgan fell to the concrete floor. Morgan suffered a serious fracture to his left heel, which has required two surgeries and extensive medical care.

The Morgans filed suit claiming Timmers Chevrolet was liable as a result of a premises defect. The parties agree that this case is controlled by the law of premises liability (the "premises" being the truck bed), and that Morgan was a business invitee. It is undisputed that although the plastic *bed liner* was attached to the *truck bed,* the plastic *tailgate liner* was not attached to the tailgate, either by screws or glue; it just rested on the tailgate. However, the parties do dispute what caused the tailgate liner to slip,

---

1. Plaintiffs do not appeal the directed verdict against Melissa and Kelly Morgan on their claims for loss of parental consortium.

whether Morgan himself contributed to his fall, and whether the unattached state of the tailgate liner constituted a premises condition that presented an unreasonable risk of harm.

## Deemed Admissions

In issues 10 through 12, the Morgans assert the trial court abused its discretion when it allowed Timmers Chevrolet to withdraw deemed admissions during trial.

■ After the Morgans served 34 requests for admissions on Timmers Chevrolet, Timmers filed and served responses only to requests 16 through 34; no responses were made to requests 1 through 15. Because Timmers Chevrolet did not respond to requests 1 through 15, those requests were automatically deemed admitted. Former Tex.R. Civ. P. 215(4)(a);[2] *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex.1989).

During the trial, after three witnesses had testified and 10 exhibits had been admitted into evidence, counsel for the Morgans sought to enter deemed admissions 1 through 15 into the record. Timmers Chevrolet's counsel expressed surprise and moved the trial court to allow the withdrawal of deemed admissions numbers 5, 6, 7, 8 and 9, which read:

> 5. That the failure to secure a tailgate liner with screws to the tailgate of a pickup creates a dangerous condition because the liner can slip when stepped on by a person getting out of the bed of such pickup and cause such person to fall.
>
> 6. That the failure to properly secure a tailgate liner with screws to the tailgate of a pickup may result in injuries to persons getting in or out of the back of such pickup.
>
> 7. That the manufacturer of the bedliner and tailgate liner involved in the incident warns in its installation instructions that the failure to secure the liner may result in personal injuries.

> 8. That the tailgate liner involved in the incident was not installed in the pickup in accordance with the manufacturer's installation instructions.
>
> 9. That the tailgate liner involved in the incident was designed to be secured to the tailgate of a pickup with screws.

Before ruling on the motion to withdraw the deemed admissions, the trial court was presented with the following evidence and argument:

The Morgans had served requests for admissions, containing 34 requests, on Timmers Chevrolet. On January 27, 1995, Timmers Chevrolet filed "Defendant's Responses to Plaintiffs' Request for Admissions" in the trial court, and mailed a copy to the Morgans' counsel; the response addressed only requests for admissions numbers 16 through 34. On March 13, 1995, counsel for the Morgans sent the following letter to the counsel for Timmers Chevrolet:

> Your response to requests for admissions did not include responses to requests 1–15. Please provide a copy of your response to these requests.
>
> Thank you for your attention to this matter.

The reply from the office of the counsel for Timmers Chevrolet was a letter dated March 14, 1995, signed by a secretary, which reads:

> Per your request, enclosed please find another copy of Defendant's Response to Plaintiff's Request for Admissions with regard to the above-referenced matter.

The enclosure was a duplicate of the "Defendant's Responses to Plaintiffs' Request for Admissions" that had been previously filed with the court and served on the Morgan's counsel—it responded only to requests for admissions numbers 16 through 34.

Trial began more than two years later, on July 22, 1997. There was no correspon-

---

**2.** Now *see* Tex.R. Civ. P. 198.2 & 215.4.

dence after March 14, 1995, that dealt with the responses to requests for admissions.

Counsel for Timmers Chevrolet argued to the trial court that he knew he must have prepared responses to all the requests for admissions, and that it must have been a clerical error for the responses to requests numbers 1 through 15 not to have been filed. He introduced into evidence a worksheet from his file that included proposed answers to all 34 requests for admissions, as well as proposed answers to interrogatories and requests for production. He argued that the Morgans would not be prejudiced by a withdrawal of the deemed admissions because they were aware of Timmers Chevrolet's theory of the case.

Counsel for the Morgans responded that, after he specifically advised Timmers Chevrolet's counsel that the responses to requests for admissions were incomplete, he got a certified copy of what had been filed with the court and found that the filed copy also responded only to requests numbers 16 through 34. Therefore, he concluded he had a right to assume that Timmers Chevrolet did not intend to respond to requests numbers 1 through 15, and he relied on that in the discovery process in the following ways:

> I have relied on it in the discovery process in this case in that I have taken no deposition of the Timmers Chevrolet personnel who installed bed liners. They admitted that they installed bed liners, that they have a person who does that at their shop and identified that individual. There was no need to take his deposition about what he does when he installed bed liners, no need to take the deposition of the people who moved this bed liner. They have a representative office here in Houston. They provided me a copy of their ... instructions for installing bed liners which the in-

structions themselves warn against installing the bed liner or tailgate liner without it being attached and that [to] fail to attach it [would] result in injuries or death to an individual.

> There was no need to take that deposition, and I didn't take that deposition and waste the time and money on anybody's part.... So, in addition to that, I didn't hire or consult anyone else, either as an expert or as a lay person about installing bed liners and tailgate liners and why the tailgate liner would be a dangerous condition. I didn't have someone go out and do any testing or anything of that nature, based on their admission, your Honor, and it's too late to come forward in trial and say ... it's not going to bother his case that we withdraw our admissions. It's just absolutely too late when I've relied on that.

After hearing argument, the trial court ruled that it would allow withdrawal of the deemed admissions; however, the trial court also ruled it would allow the Morgans to ask for a mistrial in order to prepare the case further. The Morgans chose not to request a mistrial.

On appeal, the Morgans argue the trial court abused its discretion when it allowed the withdrawal of the deemed admissions.

■ A trial court has broad discretion to permit or deny the withdrawal of deemed admissions. *Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *Id.*

■ The guiding rule applicable to this situation is that a party may withdraw a deemed admission "upon a showing of good cause [3] for such withdrawal ... *if* the court finds that the parties relying upon the responses ... will not be unduly prej-

---

**3.** A party can establish good cause by showing that its failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference.

*Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex. 1996); *Webb v. Ray,* 944 S.W.2d 458, 461 (Tex.App.—Houston [14th Dist.] 1997, no writ).

udiced and that the presentation of the merits of the action will be subserved thereby." Former TEX.R. CIV. P. 169(2)[4] (emphasis added). Thus, before a court can properly allow withdrawal of deemed admissions, it must find not only that good cause exists for the failure to make timely answers to the requested admissions, but also that the withdrawal can be ordered without causing undue prejudice to the party relying on the admissions and that the presentation of the merits will be subserved by the withdrawal. *Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 642–43 (Tex.App.—Texarkana 1995, writ dism'd) (even though good cause for withdrawal of deemed admissions was shown, allowing withdrawal would have unduly prejudiced the party relying on responses and therefore withdrawal not allowed); *Boone v. Texas Employers' Ins. Ass'n*, 790 S.W.2d 683, 688 (Tex.App.—Tyler 1990, no writ). The burden of proof on *all three requirements* is on the party seeking withdrawal. *Boone*, 790 S.W.2d at 689.

 This is a case wherein counsel failed to answer after the error was called to his attention, a factor that weighs against a finding of "good cause." *See North River Ins. Co. v. Greene*, 824 S.W.2d 697, 701 (Tex.App.—El Paso 1992, writ denied). However, even if the trial court concluded that Timmers Chevrolet met its burden to prove "good cause" for its failure to file full responses to the requests for admissions, the court's fact-finding should not have stopped there. Plainly, Timmers Chevrolet's waiting more than two years, until after the trial began, to try to withdraw deemed admissions upon which the Morgans had relied in preparing their case, caused undue prejudice to the Morgans.[5] *See Employers Ins. of Wausau v. Halton*, 792 S.W.2d 462, 465 (Tex.App.—Dallas 1990, writ denied) (commenting on attorney's conduct in waiting eleven months until the day of trial to try to withdraw deemed admissions).

We conclude that the trial court abused its discretion when it allowed the withdrawal of the deemed admissions after the trial had begun and evidence had been introduced. Accordingly, we sustain the Morgans' issues 10 through 12.[6]

We reverse the portion of the judgment relating to the causes of action brought by plaintiffs Richard, Donna, and Samantha Morgan, and remand that portion of the case to the trial court.[7]

---

**4.** The current TEX.R. CIV. P. 198.3 is substantially similar.

**5.** The undue prejudice can be seen clearly from a reading of the trial court's findings of fact in which the trial court found the unattached tailgate liner *became* dangerous only when it was shifted by the unloading of the transmission. The Morgans' theory was that the unattached tailgate liner was a dangerous condition from the outset, a matter Timmers Chevrolet had admitted by deemed admissions, and a matter that the Morgans would have purportedly shown through expert testimony if they had not relied on the deemed admissions. The Morgans' ability to meet their burden of proof in this case was unduly prejudiced. In fact, the trial court explicitly acknowledged that the Morgans would suffer prejudice by the withdrawal of the deemed admissions when it offered a mistrial so the Morgans could engage in further discovery. The Morgans were not required to accept a mistrial—they were entitled to rely on the guiding rules and principles set out in the Rules of Civil Procedure regarding deemed admissions.

**6.** In light of our ruling on issues 10 through 12, it is unnecessary for us to rule on the remaining issues presented, and we decline to do so.

**7.** The portion of the judgment relating to the causes of action brought by Melissa and Kelly Morgan remains intact, not having been appealed. *See supra* note 1.